1  E. MARTIN ESTRADA
   United States Attorney
2  MACK E. JENKINS
   Assistant United States Attorney
3  Chief, Criminal Division
   JOHN J. LULEJIAN (Cal. Bar No. 186783)
4  Assistant United States Attorney
        1200 United States Courthouse
5       312 North Spring Street
        Los Angeles, California 90012
6       Telephone: (213) 894-0721
        Facsimile: (213) 894-0141
7       E-mail:    John.Lulejian@usdoj.gov

8  Attorneys for Plaintiff
   UNITED STATES OF AMERICA
9

**FILED**
CLERK, U.S. DISTRICT COURT

11/19/2024

CENTRAL DISTRICT OF CALIFORNIA
BY: ___KL___ DEPUTY

**LODGED**
CLERK, U.S. DISTRICT COURT

11/19/2024

CENTRAL DISTRICT OF CALIFORNIA
BY: ___ASI___ DEPUTY

10            UNITED STATES DISTRICT COURT

11         FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  IN THE MATTER OF THE           No. 2:24-mj-06964-DUTY
    EXTRADITION OF
13                                 COMPLAINT
    FELIX BENGT MAGNUS NILSSON,
14                                 FOR PROVISIONAL ARREST WITH
    A Fugitive from the            A VIEW TOWARDS EXTRADITION
15  Government of the              (18 U.S.C. § 3184); ORDER THEREON
    Kingdom of Sweden.
16

17

18  TO:  Honorable Alicia G. Rosenberg
         United States Magistrate Judge
19       Central District of California

20       I, JOHN J. LULEJIAN, being duly sworn, depose and state that I

21  am an Assistant United States Attorney for the Central District of

22  California and act for the United States in fulfilling its

23  obligations to the Government of the Kingdom of Sweden ("Sweden")

24  pursuant to the Convention on Extradition Between the United States

25  of America and Sweden, U.S.-Swed., Oct. 24, 1961, 14 U.S.T. 1845, as

26  amended by the Supplementary Convention on Extradition Between the

27  United States of America and Sweden, U.S.-Swed., Mar. 14, 1983, 35

28  U.S.T. 2501, and the Instrument as contemplated by Article 3(2) of

the Agreement on Extradition Between the United States of America and the European Union signed 25 June 2003, as to the application of the Convention on Extradition Between the United States of America and Sweden signed 24 October 1961 and the Supplementary Convention on Extradition Between the United States of America and the Kingdom of Sweden signed 14 March 1983, U.S.-Swed., Dec. 16, 2004, S. Treaty Doc. No. 109-14 (2006) (collectively, the "Extradition Treaty"), with respect to the fugitive, FELIX BENGT MAGNUS NILSSON ("NILSSON"; DOB: **/**/1997).

In accordance with Title 18, United States Code, Section 3184, I charge on information and belief as follows:

1.    That Article XIII of the Extradition Treaty provides for the provisional arrest and detention of alleged fugitive pending the submission of a formal request for extradition and supporting documents.

2.    That in accordance with Article XIII of the Extradition Treaty, the Government of Sweden has asked the United States for the provisional arrest of NILSSON with a view towards his extradition.

3.    That according to the information provided by the Government of Sweden, NILSSON is being prosecuted for a number of offenses, including four counts of gross fraud and one count of attempted gross fraud, in violation of Chapter 9, Section 3; Chapter 9, Section 11; and Chapter 23, Section 1 of the Swedish Penal Code.[1]

---

[1] The United States is seeking a warrant for NILSSON's provisional arrest based only on these charges. Sweden has requested NILSSON's provisional arrest on additional charges, and the United States' decision to proceed in urgent circumstances on these select charges is without prejudice to proceeding on additional

*(footnote cont'd on next page)*

1     4.    Swedish authorities allege that NILSSON committed these

2  offenses within the jurisdiction of Sweden.

3     5.    That on or about November 19, 2024, Judge Richard Perez of

4  the Stockholm District Court found probable cause that NILSSON

5  engaged in gross fraud and attempted gross fraud and issued a warrant

6  for NILSSON's arrest the same day.

7     6.    That on or about November 19, 2024, Sweden sent a

8  provisional arrest request to the United States.

9     7.    That the offenses for which NILSSON's provisional arrest is

10 sought are covered by Article II of the Extradition Treaty.

11     8.    Authorities from Sweden alleged the following facts related

12 to the above offenses in their request for the provisional arrest of

13 NILSSON:

14                 Overview of the Criminal Scheme

15        a.    Swedish authorities believe that NILSSON is part of a

16 network of criminals ("the network") who committed major fraud

17 against Swedish targets since approximately 2019, during which time,

18 the network fraudulently obtained approximately 320 million Swedish

19 Krona ("SEK") (approximately 30 million USD) from its victims.

20 According to Swedish authorities, the network has connections to

21 major organized crime and high-ranking individuals within those

22 organizations.  The top ranks of these criminal organizations have

23 directly benefitted from the network's fraud, by receiving a

24 percentage of the proceeds from the crimes, and using the network to

25 move money outside the legal monetary system, where they can avoid

26 detection by authorities and state institutions.  The network has

27

28 charges when Sweden's formal request for extradition has been
   reviewed by the Department of State and is presented to the Court.

also been implicated in large-scale money laundering, VAT fraud, and business email compromise fraud, with proceeds estimated at approximately 150 million SEK (approximately 14 million USD). Swedish authorities believe that NILSSON is part of the top echelon of the network and runs his criminal activities while living in the United States.

b.    According to Swedish authorities, the network typically targets private individuals in Sweden who are business owners and/or high earners.  Authorities believe that once the network selects a victim, it sends out a text message that appears to come from the victim's bank, urging the victim to call the bank using a telephone number in the text message.  When the victim calls the telephone number in the text message, he/she is connected to the fraudulent "bank's card-blocking service."  The victim then is deceived by the service into creating a new BankID,[2] and/or downloading remote-access software on their telephone or computer, which allows the network to remotely control the victim's mobile device.  The network then uses the newly created BankID to transfer funds from the victim's personal accounts and/or his/her company accounts.  The transactions typically are foreign transactions, mostly to Turkey or Spain, or transfers to individuals that result in transactions with neobanks,[3] such as Revolut and Wise, which ultimately are exchanged for cryptocurrency.  The transactions, by design, take place in several stages and use a large number of "strawmen," to launder the proceeds of the fraudulent transactions.

---

[2] BankID is a form of electronic identification used in Sweden.

[3] A neobank is a financial services organization that has no physical location,  is typically only accessible via digital means, and is often driven by a mobile experience with smartphone apps.

1                    NILSSON's Role in the Criminal Scheme

2              c.    During the course of their investigation, Swedish

3   authorities determined that NILSSON played a major role in the

4   network's fraudulent scheme by linking his name, telephone numbers,

5   and IP address to fraudulent activities.  Furthermore, Swedish

6   authorities have a confidential source ("CS") who provided

7   information that NILSSON is the main perpetrator of the fraud.[4]

8   According to the CS, NILSSON has access to the victims' bank accounts

9   and controls the flow of money from those accounts.  NILSSON is

10  solely in control of the bank accounts, and does not share control

11  with anyone else, due to mistrust and his fear that an associate will

12  "rob" him.  The CS related that NILSSON lives in Los Angeles,

13  California, with his girlfriend, U.E.H., and lives a life of luxury

14  despite not making any money by legitimate means.  CS also told

15  Swedish police that NILSSON sent him photographs of stacks of money

16  that NILSSON claimed he obtained from a crypto currency cash point.

17  Finally, the CS told investigators he had been in daily contact with

18  NILSSON for several years.

19             d.    As part of the investigation of the network, Swedish

20  authorities arrested Osama Shebani ("Shebani"), one of NILSSON's co-

21  conspirators and convicted him of gross fraud for his participation

22  in the network's fraudulent scheme.  Extracting data from the co-

23  conspirator's telephone revealed several chat logs on the messaging

24  application Signal between Shebani and NILSSON.  In these chats, the

25  two men spoke considerably about the fraud and NILSSON sent images of

26  _____

27        [4] Swedish authorities have represented to the United States that
    they believe the CS is reliable and that information the CS has
28  provided is consistent with what they have developed during their
    investigation.

                                    5

1  victims' bank accounts, for which he would only have access by

2  fraudulent means.  These messages are referenced below as being sent

3  by the Signal application using the username "xnationx."

4          e.    Based on evidence collected during the investigation

5  of the network, Swedish authorities have determined that NILSSON

6  controlled the victims' bank accounts and that his username on Signal

7  was "xnationx," from which he sent photographs of himself in control

8  of some of the accounts.  Furthermore, Swedish authorities determined

9  that NILSSON created fraudulent BankIDs, which were traced to his

10 addresses in Los Angeles.

<u>Specific Evidence of Fraud</u>

<u>Fraud Perpetrated Against Victims M.M. and S.S.</u>

13         f.    Swedish authorities allege that on or about

14 July 1, 2021, NILSSON attempted to deceive M.M. and take over her

15 Skandinaviska Enskilda Banken ("SEB") bank account.  M.M. was

16 tricked, via text, into contacting telephone number *******0519, a

17 telephone number that appeared to belong to SEB.  After receiving the

18 text message, M.M. was deceived into creating a new BankID,

19 downloading the application "Anydesk," and approving transactions

20 with her BankID twice and with her digital security device once.[5]

21 However, in this instance, for reasons that are unclear, funds were

22 not transferred from M.M.'s SEB bank account.

23         g.    Swedish authorities further allege that between about

24 July 1 and 2, 2021, NILSSON deceived S.S., took over his SEB account,

25 and transferred approximately 5,147,718 SEK (approximately 470,653

26

27

─────────────

28        [5] Anydesk is remote access software used by support agents to
remotely control a device once permission is given.

1   USD).[6]  S.S., like M.M., received a text message that appeared to
2   belong to SEB, instructing him to contact telephone number
3   ********0519.  Thereafter, he was deceived into creating a new
4   BankID, downloading Anydesk, and scanning a QR code via BankID.
5   Following these actions, a third party, without S.S.'s knowledge or
6   consent, exerted remote control over his mobile device, accessed his
7   bank account via the new BankID, and transferred approximately
8   5,147,718 SEK (approximately 470,653 USD) out of his bank account.

9          h.   Swedish authorities identified NILSSON as the
10  perpetrator of the attempted gross fraud against M.M. and the
11  completed gross fraud against S.S. as follows:

12             i.   By obtaining and reviewing records from Tele2, a
13  Swedish telephone operator, Swedish authorities identified a call
14  from telephone number ********0612 to telephone number ********0519,
15  the telephone number M.M. and S.S. were instructed to call in the
16  text messages.  According to records authorities obtained from Apple,
17  telephone number ********0612 is associated with NILSSON's Apple ID
18  (fnilsson97@icloud.com).  Tele2 records also confirmed that the
19  Apple ID information matched NILSSON's mobile device.  Based on their
20  investigation, authorities believe that purpose of this call was for
21  NILSSON to confirm whether telephone number ********0519  was a
22  working telephone number.

23             ii.  Additionally, the investigation revealed that
24  funds transferred from S.S. went to different accounts.
25  Approximately 2,000,000 SEK (approximately 232,775 USD) were
26  transferred from a company account with Svea Bank belonging to Khan

27  _____

28       [6] The monetary conversions are approximate and based on the
     exchange rate for November 19, 2024, which is 1 USD for 10.9401 SEK.

Group AB.  Further, Swedish authorities learned that the only person with the right to dispose of funds in this particular account was J.G.P., a Swedish citizen.  The funds were then transferred to various other accounts using J.G.P.'s BankID, which was registered at IP address 198.44.208.1.  By analyzing the GPS positions of several BankID's that had transactions via IP address 198.44.208.1 between 2022 and 2023, Swedish authorities were able to geographically connect this IP address to NILSSON's residence in Los Angeles, California.  In addition, authorities were able to link IP address 198.44.208.1 to NILSSON's Apple ID, as well as his Binance (cryptocurrency exchange) account, which he opened using a Swedish passport identifying himself as Felix Nilsson.  Further, the IP address is linked to the Instagram user "fnilsson_," which interacted with the Instagram account of NILSSON's girlfriend, U.E.H.  That Instagram account includes photographs that depict both NILSSON and U.E.H. in a romantic relationship with each other.

<u>Fraud Perpetrated Against Victims K.S. and O.B.</u>

        i.   Swedish authorities allege that between about August 5 and 6, 2021, NILSSON deceived K.S. in order to take over her Handelsbanken bank account and transfer approximately 1,313,899 SEK (approximately 120,106 USD) out of it.  K.S. received a text message stating that she had to "Please call administrator Niklas Lundgren at telephone number ********8011."  The text message falsely appeared to belong to Handelsbanken.  When K.S. called the number, she was deceived into creating a new BankID and downloading the application Anydesk.  Following these actions, a third party, without K.S.'s knowledge or consent, exerted remote control over her mobile device, accessed her bank account via the new BankID, and transferred

approximately 1,313,899 SEK (approximately 120,106 USD) out of her bank account.  Afterward, Signal user "xnationx" related in a chat with Shebani that he had control of K.S.'s bank.  Signal user "xnationx" also sent a message to Shebani with a photograph of his digital device logged into K.S.'s account and displaying her account number.

       j.   Swedish authorities further allege that on or about August 5, 2021, NILSSON deceived O.B. in order to take over his account and transfer approximately 229,500 SEK (approximately 20,979 USD).  O.B. was tricked into calling a telephone number that appeared to belong to Nordea Bank ("Nordea"), and then into approving transactions with his digital security device and entering the response codes.  Following these actions, a third party, without O.B.'s knowledge or consent, exerted remote control over his mobile device and transferred approximately 229,500 SEK (approximately 20,979 USD) out of his bank account.  Afterward, Signal user "xnationx" shared a screenshot with Shebani showing that he was logged into O.B.'s Nordea bank account.  Signal user "xnationx" also stated that he needed accounts to manage the flow of money.

       k.   Swedish authorities identified NILSSON as Signal user "xnationx" based on the following evidence:

       i.   During a chat on Signal with Signal user "xnationx," Shebani sent a photograph of NILSSON from a go-karting competition in or about 2012.  Signal user "xnationx" responded, "Ha ha, I looked ugly back then."

       ii.   An image sent by Signal user "xnationx" to Shebani that showed Signal user "xnationx" logged into a banking website that says, "Welcome, Felix."

1          iii. In other exchanges with Shebani, Signal user

2    "xnationx" communicated in Swedish and spoke of having a girlfriend,

3    both of which are consistent with NILSSON's mother tongue and

4    relationship status.

5                    Fraud Perpetrated Against Victim T.S.

6          l.    Swedish authorities allege that between about

7    January 17 and 20, 2022, NILSSON deceived T.S. via a text in order to

8    take over his account and transfer approximately 289,000 SEK

9    (approximately 26,417 USD).  T.S. was tricked into calling a number

10   appearing to belong to Nordea, then installing the application

11   Anydesk and changing his BankID.  Following these actions, a third

12   party, without T.S.'s knowledge or consent, exerted remote control

13   over his mobile device and using his BankID transferred approximately

14   289,000 SEK (approximately 26,417 USD) out of his bank account.

15         m.    Swedish authorities believe that the perpetrator of

16   this fraud was NILSSON for the following reasons:

17         i.    The device used to access T.S.'s BankID and bank

18   account was linked to one or more telephone numbers associated with

19   L.J., a victim of identity theft.  On or about July 21, 2021, Signal

20   user "xnationx" bragged to Shebani that he had access to all of

21   L.J.'s personal data, including his Swedish national identity card,

22   which he displayed.  As detailed above, Swedish authorities believe

23   that NILSSON is Signal user "xnationx."

24         ii.   On or about July 27, 2021, telephone number

25   ********0612 connected to L.J.'s Swish payment account.[7]  As detailed

26

27   _____

28         [7] Swish is a Swedish mobile payment system only available to
     customers of participating Swedish banks.

1  above, ********0612 is the telephone number associated with NILSSON's

2  Apple ID.

3          iii. Telephone number ********5344, a telephone number

4  registered to a company of which L.J. is a board member, was

5  automatically linked to the mobile device containing T.S.'s

6  fraudulent BankID.  This device gives GPS location when the

7  electronic ID is created.  The investigation revealed that on or

8  about January 17, 2022, the GPS position of the device was a

9  residential address in Los Angeles, California.[8]  Swedish authorities

10 also learned that NILSSON listed this same address on his

11 professional resume, screenshots of which Sweden provided in their

12 provisional arrest request.

13     9.   I am informed and believe that NILSSON may be found within

14 the jurisdiction of this Court.  On November 16, 2024, NILSSON was

15 charged by Amended Criminal Complaint in Case No. 2:24-mj-06913 for a

16 violation of 31 U.S.C. § 5324(a)(3) (Structuring of Currency

17 Transactions to Evade Reporting Requirements).  On that same day, the

18 Honorable Stephanie Christensen, United States Magistrate Judge for

19 the Central District of California, issued a warrant for NILSSON's

20 arrest.  On November 19, 2024, U.S. law enforcement agents arrested

21 NILSSON at his residence in Los Angeles, California.  He is expected

22 to initially appear on those charges before this Court on or about

23 November 19, 2024.

24     10.  That the Government of Sweden has represented that it will

25 submit a formal request for extradition supported by the documents

26

27

28

_____

[8] This address is different than NILSSON's residence.

11

1   specified in the Extradition Treaty, within the time required under

2   the Extradition Treaty.

3        WHEREUPON, complainant requests that a warrant be issued, based

4   on probable cause, pursuant to Title 18, United States Code, Section

5   3184, for the arrest of NILSSON and the extradition treaty between

6   the United States and Sweden, and that this complaint and the warrant

7   be placed under the seal of the Court, except as disclosure is needed

8   for its execution, until such time as the warrant is executed.

9   DATED: This 19th day of November, 2024, at Los Angeles, California.

10                               Respectfully submitted,

11                               E. MARTIN ESTRADA
                                 United States Attorney
12
                                 MACK E. JENKIINS
13                               Assistant United States Attorney
                                 Chief, Criminal Division
14

15                               /s/ John J. Lulejian
                                 JOHN J. LULEJIAN
16                               Assistant United States Attorney

17                               Attorneys for Complainant
                                 UNITED STATES OF AMERICA
18

19   Subscribed and sworn to by
     the applicant by telephone on
20   this 19th day of November,
     2024.
21

22

23   HONORABLE ALICIA G. ROSENBERG
     UNITED STATES MAGISTRATE JUDGE
24

25

26

27

28

                                   12